[ECF No. 24]

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

---

WILLIAM STOTT et al.,

      Plaintiffs,

    v.

SPLIT DECISION MUSIC, LLC et al.,

      Defendants.

Civil No. 20-14916 (RMB/SAK)

---

## OPINION AND ORDER

This matter is before the Court on the "Cross-Motion for Extension of Time to Complete Service" [ECF No. 24] filed by Plaintiffs William Stott a/k/a Billy Stott and Doreen Stott d/b/a Billy Stott Productions and Starfield Entertainment (collectively, "Plaintiffs"). The Court received the opposition filed by Defendants Split Decision Music, LLC, Douglas Moore, Michael Birchard, Raymond Pierson, Thomas King, Jason Thomas, Anderson Entertainment Management, Inc. a/k/a A.E.M., Inc. and d/b/a Anderson Entertainment, and Frank Annuziata (collectively, "Defendants") [ECF No. 26], and Plaintiffs' reply [ECF No. 28]. The Court exercises its discretion to decide the cross-motion without oral argument. *See* FED. R. CIV. P. 78; L. CIV. R. 78.1. For the reasons to be discussed, Plaintiffs' cross-motion is **GRANTED**.

## I.   BACKGROUND

Plaintiffs filed this trademark infringement action on October 23, 2020 against Defendants asserting various claims under state and federal law arising out of an alleged business dispute. *See* Compl. [ECF No. 1]; Am. Compl. [ECF No. 4]. Plaintiffs are engaged in business together under

the names "Billy Stott Productions" and "Starfield Entertainment," through which they manage, produce, and promote musical acts and offer other entertainment-related services. *See* Am. Compl. ¶¶ 1–2, 5–8, 29.  In the course of their business, Plaintiffs contend that Billy Stott created the musical act "Split Decision" (the "Band") in 1991, developed "an entertainment brand" around its name, and has remained associated with the Band ever since. *See id.* ¶¶ 30–35.  By means of this association, Plaintiffs further contend that Mr. Stott established a common law ownership interest in the trademark name of the Band.[1] *See id.* ¶¶ 40–41.

In brief, Plaintiffs allege Defendants Douglas Moore, Michael Birchard, Raymond Pierson, Thomas King, and Jason Thomas—who were all members of the Band by 2018—terminated their relationship with Plaintiffs on or about October 24, 2018. *See id.* ¶¶ 3, 48, 51.  Shortly thereafter, they contracted with Defendants Anderson Entertainment Management, Inc. and Frank Annuziata (collectively, the "AEM Defendants") to continue performing as the Band. *See id.* ¶¶ 4, 53–55. Plaintiffs further allege that in 2015, Moore registered Defendant Split Decision Music, LLC (the "LLC") as a New Jersey limited liability company without Plaintiffs' knowledge or consent and in violation of the parties' management agreement. *See id.* ¶¶ 46–47.  Following the termination of the parties' business relationship, the LLC filed an application with the U.S. Patent and Trademark Office ("USPTO") to register "Split Decision" as a trademark. *See id.* ¶ 57. Subsequently, Plaintiff Billy Stott filed a notice of opposition with the U.S. Trademark Trial and Appeal Board ("TTAB") opposing the LLC's application and alleging, *inter alia*, that the LLC was "engaged in a fraud" on the USPTO in submitting its application to register the trademark. *Id.* ¶¶ 58–59.  While Mr. Stott's opposition with the TTAB was pending, Plaintiffs initiated the instant action against Defendants. *See id.* ¶ 60.

---

[1] Plaintiffs assert Mr. Stott continues to own the "Split Decision" trademark but has since licensed it to his wife, Doreen Stott, for purposes of carrying out their business operations. *See id.* ¶ 42.

2

Two dates are significant at the outset of the Court's discussion: (1) October 24, 2020 and (2) January 21, 2021.  All parties seemingly agree that the statute of limitations on at least some of Plaintiffs' claims ran on October 24, 2020—just one day after the initial Complaint was filed. *See* Pls.' Br. at 3 [ECF No. 23]; Defs.' Letter, Mar. 2, 2021 at 1 [ECF No. 14].  All parties also seemingly agree that January 21, 2021 was the 90th day after Plaintiffs filed suit, making it the last day on which Plaintiffs could serve process under Federal Rule of Civil Procedure 4(m). *See* Pls.' Br. at 4; Defs.' Opp'n at 3.  Notably, on January 20, 2021, a day before the service deadline, Plaintiffs filed their First Amended Complaint asserting four additional claims based on discovery they obtained in the TTAB proceeding. *See* Pls.' Br. at 3 (noting that discovery in the TTAB closed on December 20, 2020); *see also* Am. Compl.  What is also notable is that Plaintiffs did not request an extension of time to effect service at any time during the service period.

At the onset of the 90-day service period—particularly, five days after Plaintiffs filed their initial Complaint, Plaintiffs emailed Carrie A. Ward, Esquire, counsel for the LLC in the TTAB matter and co-counsel for all Defendants in this action. *See* Romano Decl. ¶¶ 7–8 [ECF No. 23-1]. Plaintiffs' email was sent by Glenn C. Romano, Esquire, counsel for Mr. Stott in the TTAB matter and co-counsel for Plaintiffs in this action. *See id.* ¶ 2.  The email included a courtesy copy of Plaintiffs' initial Complaint. *See id.* ¶ 8.  No party disputes this account or the email's contents. Defendants note, however, that the email did not include a request to waive or accept service and that, at the time, Ms. Ward only represented the LLC. *See* Ward Decl. ¶¶ 14–15 [ECF No. 26-1]. The Court also notes that it appears no response was ever sent or received.  On January 12 and 14, 2021, Mr. Romano again emailed Ms. Ward to inquire whether, and for whom, she would accept service in this action but received no reply. *See* Romano Decl. ¶ 9.  On or about January 19, 2021, Mr. Romano followed up with Ms. Ward by telephone, leaving her a voicemail but receiving no

response. *See id.* ¶ 10.

Plaintiffs allegedly proceeded in this manner because of issues with personal service of subpoenas on the Band-member defendants to appear for depositions in the TTAB matter, which Plaintiffs characterize as their repeated attempts to evade service. *See id.* ¶¶ 3–6.  The service issues were only resolved after Mr. Romano emailed Ms. Ward.  As a result, Plaintiffs allege they did not formally attempt to effect service on Defendants in this action until January 20, 2021—the last day for service under Rule 4(m) and the same day Plaintiffs filed their Amended Complaint. Plaintiffs assert they elected to utilize Rule 4(e)(1) to effect service pursuant to New Jersey law. *See* Pls.' Br. at 4. Specifically, Plaintiffs assert they relied on New Jersey Court Rule 4:4-4(c), which provides for optional mailed service in lieu of personal service, to serve the Summons and Amended Complaint on Defendants by certified return receipt mail and ordinary mail. *See id.* at 4–5; Galli Decl. ¶ 3 [ECF No. 23-7].  On February 3, 2021, Plaintiffs filed their returns of service indicating they served each Defendant as such.[2] *See* ECF Nos. 5–12.

On February 9, 2021, counsel for Defendants, including Ms. Ward, filed an application on behalf of all Defendants seeking an extension of time to respond to the Amended Complaint, which was granted the next day. *See* ECF Nos. 13, 14.  On March 2, 2021, the day the answer was due, defense counsel filed a letter addressed to the Honorable Renée M. Bumb, U.S.D.J., to request a pre-motion conference regarding Defendants' intention to file a motion to dismiss for insufficient service of process pursuant to Rules 12(b)(5) and 4(m). *See* Defs.' Letter at 1; *see also* Pls.' Letter, Mar. 9, 2021 [ECF No. 15].  Upon finding that a pre-motion conference would not be productive, Judge Bumb directed Defendants to proceed with filing their proposed motion. *See* ECF No. 16.

---

[2] Plaintiffs allege "Defendants renewed their efforts to evade service" in response to the mailings based on, *inter alia*, two of the return receipts being signed by "Covid-19" and at least two others being returned as "refused." Pls.' Br. at 5.

On March 23, 2021, Defendants filed their motion to dismiss. *See* Mot. [ECF No. 17]. Plaintiffs

opposed the motion and cross-moved for an extension of time to complete service. *See* Cross-Mot.

[ECF No. 24].

Plaintiffs submit numerous arguments in support of their cross-motion. To start, Plaintiffs

assert the plain language of Rule 4(m) mandates an extension of time for service upon a showing

of good cause. *See* Pls.' Br. at 6–7. They further assert that even in the absence of good cause,

Rule 4(m) allows the Court to exercise its discretion to extend the time for service. *See id.* at 1–2,

7–9. Accordingly, while Plaintiffs argue that they have established good cause, they alternatively

argue that if the Court finds otherwise, it should exercise its discretion to allow for extra time for

service. *See id.* In particular, Plaintiffs submit that the following factors support the exercise of

the Court's discretion in their favor:

> (a) Service was in process and timely under N.J. Court Rule 4:4-4(c) and remains
> so through this date; (b) Defendants and their counsel have been aware of this suit,
> likely since at least October 28, [2020]; (c) Both the LLC defendant and defense
> counsel here are engaged in litigation with Mr. Stott before the [TTAB], concerning
> the trademark at issue in this action; (d) Defendants have ducked service both in
> the TTAB matter and here, . . . ; and (e) As of [March 29, 2021], all but one of the
> individual defendants (Thomas King) have now been served.[3]

*Id.* at 1–2. Plaintiffs began attempting personal service on Defendants, purportedly in accordance

with New Jersey Court Rule 4:4-4(c), after March 21, 2021, which marked the 60th day since they

attempted mailed service under the Rule. *See id.* at 5–6. Plaintiffs proceeded under the theory that,

despite the service period having lapsed under Federal Rule 4(m), New Jersey Court Rule 4:4-4(c)

provided Plaintiffs with an additional 60-day period to attempt service using other methods where

Defendants fail to answer or otherwise appear.[4] *See id.* Plaintiffs do not, however, cite to any

---

[3] *See* Pls.' Br. at 5–6 (citing ECF Nos. 18–22). Plaintiffs also represented at the time that attempts
to personally serve Defendant King were ongoing, while noting he was one of the Defendants who
"repeatedly avoided service of a deposition subpoena in the TTAB" matter. *See id.* at 6.
[4] *See* N.J. CT. R. 4:4-4(c) ("If a defendant "does not answer or appear within 60 days following

5

authority in support of this proposition.  Based on this interpretation, Plaintiffs contend they had until May 20, 2021 to properly effect service under New Jersey law. *See id.* at 6.

Defendants oppose Plaintiffs' cross-motion contending that they are unable to demonstrate good cause for their failure to timely effect service, and therefore, it must be denied. *See* Defs.' Opp'n at 1.  Defendants also object to any characterization of Defendants' conduct, either in the TTAB or in this action, as evidence of avoidance of service. *See id.* at 1, 8–12.  Instead, Defendants contend Plaintiffs "are trying to manufacture a reason to blame Defendants for their own dilatory conduct." *See id.* at 11.  Defendants also contend Plaintiffs misinterpret the way in which Rule 4 interacts with state law. *See id.* at 5–6.  Specifically, Defendants assert that Rule 4(e)(1), while providing for the use of state law service methods, does not permit "state law time limits to override Rule 4(m)." *Id.* at 6 (citing FED. R. CIV. P. 4(c)(1)).  Defendants' remaining arguments largely focus on Plaintiffs' inability to show good cause, allegedly, in part, because of an admitted absence of prejudice to Defendants by lack of timely service. *See id.* at 8, 7–12.

In their reply, Plaintiffs allege that Defendants continue to apply the wrong legal standard. *See* Reply at 1.  Plaintiffs contend they are entitled to a good cause extension, or alternatively, a discretionary extension, based on the following factors: (1) the limitations period in two of Plaintiffs' claims may have expired; (2) Defendants have attempted to evade service; (3) Defendants had actual notice of the action and defense counsel had a copy of complaint itself; (4) Defendants will not be prejudiced; and lastly, (5) that Defendants' efforts here are, in actuality, an attempt to dispose of this case on a technicality rather than on its merits. *See id.* at 4–5.  Plaintiffs further contend that, as of April 6, 2021, all Defendants have been personally served. *See id.* at 3 (citing ECF Nos. 18–22, 25).  Therefore, Plaintiffs argue their cross-motion should be granted and

---

mailed service, service shall be made as is otherwise prescribed by [Rule 4:4-4], and the time prescribed by [Rule] 4:4-1 for issuance of the summons shall then begin to run anew.").

the personal service on Defendants deemed timely and valid, even if it is found to have occurred outside the 90-day service period provided by Rule 4(m). *See* Pls.' Br. at 9.

## II.   <u>DISCUSSION</u>

### A.  Legal Standard

Federal Rule of Civil Procedure 4 governs service of a summons and complaint.  Because Defendants in this action include both individuals and corporations presumably located within a judicial district of the United States, service in this matter is governed by Rules 4(e) and 4(h), respectively.  Accordingly, Plaintiffs may serve Defendants by following the New Jersey laws for service on an individual in state court.[5] *See* FED. R. CIV. P. 4(e)(1), (h)(1)(A).  Personal service is the "primary method of obtaining *in personam* jurisdiction over a defendant" in New Jersey. *See* N.J. CT. R. 4:4-4(a).  New Jersey Court Rules also provide for "optional mailed service" in lieu of personal service, "made by registered, certified or ordinary mail, provided, however, that such service shall be effective for obtaining *in personam* jurisdiction only if the defendant answers the complaint or otherwise appears in response thereto." N.J. CT. R. 4:4-4(c); *see, e.g.*, *Whitney v. Bloomin Brands, Inc.*, No. 20-12407, 2021 WL 1904706 (D.N.J. May 11, 2021) (citations omitted) ("Challenging the sufficiency of service prior to answering the complaint, as Defendants do here, does not make service by mail effective under New Jersey law.").

Pursuant to Rule 4(m), a district court must dismiss an action without prejudice, or order that service be made within a specified time, if the plaintiffs fail to serve the defendants within 90 days of filing their complaint. *See* FED. R. CIV. P. 4(m); *see also Kornea v. J.S.D. Mgmt., Inc.*,

---

[5] *See* FED. R. CIV. P. 4(h)(1)(A) (authorizing service of process on a domestic corporation located within a judicial district of the United States "in the manner prescribed by Rule 4(e)(1) for serving an individual"); FED. R. CIV. P. 4(e)(1) ("[A]n individual . . . may be served in a judicial district of the United States by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made.").

336 F. Supp. 3d 505, 511 (E.D. Pa. 2018) ("Filing an amended complaint does not restart the clock for serving defendants.").  If the plaintiffs show "good cause," however, a "court must extend the time for service for an appropriate period." *Id.*  In other words, Rule 4(m) is part mandatory and part discretionary.  As such, in determining whether to grant an extension of time to effect service, a court must engage in a two-part inquiry. *See Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305–06 (3d Cir. 1995).  First, the court must determine whether good cause exists for an extension of time, and if it does, grant the extension and end the inquiry. *See id.* at 1305.  If, however, good cause does not exist, the court must decide whether to dismiss the action without prejudice or to exercise its discretion and extend the time for service—notwithstanding the absence of good cause. *See id.*  In fact, a court abuses its discretion by relying on its good cause analysis to find an exercise of discretion is unwarranted *per se*. *See Boley v. Kaymark*, 123 F.3d 756, 758–60 (3d Cir. 1997); *see also Davis v. Samuels*, 962 F.3d 105, 116 (3d Cir. 2020).

As to the first inquiry, "the primary focus is on the plaintiff[s'] reasons for not complying with the time limit in the first place." *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995).  The plaintiffs must demonstrate "good faith" and "some reasonable basis for noncompliance within the time specified in the rules." *Id.* (quoting *Petrucelli*, 46 F.3d at 1312).  The plaintiffs must also show that they exercised diligence in attempting to effect service. *See Himmelreich v. United States*, 285 F. App'x 5, 7 (3d Cir. 2008) (citing *Bachenski v. Malnati*, 11 F.3d 1371, 1376–77 (7th Cir. 1993)).  Within this context, courts have considered three factors in determining the existence of good cause: (1) the reasonableness of the plaintiffs' efforts to serve; (2) prejudice to the defendants by lack of timely service; and (3) whether the plaintiffs timely moved for an extension of time. *See Beautyman v. Laurent*, 829 F. App'x 581, 583 (3d Cir. 2020) (quoting *MCI Telecomms.*, 71 F.3d at 1907); *cf. Petrucelli*, 46 F.3d at 1306 ("[A] district court

8

may not consider the fact that the statute of limitations has run until after it has conducted an examination of good cause.").

As to the second inquiry, concerning discretion, a court may consider and balance other factors, such as: (1) actual notice of the legal action; (2) prejudice to the defendants; (3) the statute of limitations; (4) conduct of the defendants; (5) whether the plaintiffs are represented by counsel; and (6) any other relevant factor. *See Chiang v. U.S. Small Bus. Admin.*, 331 F. App'x 113, 116 (3d Cir. 2009) (citing FED. R. CIV. P. 4(m) advisory committee's note to 1993 amendments; *Boley*, 123 F.3d at 759); *see also Petrucelli*, 46 F.3d at 1305–06  (citation omitted) (noting an extension may be justified if the defendants are "evading service or conceal[] a defect in attempted service"). Additionally, the Third Circuit has "repeatedly stated [its] preference that cases be disposed of on the merits," rather than through procedural technicalities. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984); *see Gonzalez v. Thomas Built Buses, Inc.*, 268 F.R.D. 521 (M.D. Pa. 2010). The plaintiffs bear the burden of demonstrating why the Court should exercise its discretion. *Cf. McCurdy v. Am. Bd. of Plastic Surgery*, 157 F.3d 191, 296 (3d Cir. 1998) (affirming district court's denial of extension where it concluded "that [plaintiff] had demonstrated no basis to justify the court's discretion to grant an extension of time in which to serve").

### B.  Analysis

At the outset, the Court must determine whether the method of service was improper before considering whether an extension of time is warranted.  Plaintiffs allege that they properly served Defendants by certified return receipt and ordinary mail. *See* Pls.' Br. at 4–6.  Plaintiffs contend this method of service was proper and timely under Federal Rule 4(e)(1) and New Jersey state law, despite the inherent conflict with Rule 4(m)'s time limit. *See id.*  In addition, Plaintiffs allege that they have since personally served all Defendants consistent with and pursuant to New Jersey law.

9

*See id.* For the reasons to be discussed in detail, the Court finds Plaintiffs failed to properly serve Defendants. The Court further finds no good cause exists for a mandatory extension. The Court finds, however, that an exercise of its discretion is warranted as to all Defendants and, therefore, will grant Plaintiffs' cross-motion to extend the time for service and deem the personal service on all Defendants timely.

### 1. Attempted Service

Plaintiffs assert they properly invoked New Jersey Court Rule 4:4-4(c) to attempt service by mail on Defendants on January 20, 2021—the day before service was due under Rule 4(m). *See* Pls.' Br. at 4–5. Plaintiffs contend they are permitted to use this method of service without having attempted personal service. *See id.* at 6. Plaintiffs further contend, without citing to any case law or other authority, that the 60 days provided for Defendants to answer or respond somehow tolled Rule 4(m)'s time limit well beyond January 21, 2021. *See id.*; *see also* N.J. CT. R. 4:4-4(c).

Subject to limited exceptions which are not applicable here, Rule 4(e) does not authorize service of initial process by mail; it requires that a plaintiff personally serve a defendant or follow the state law in which the district court is located or where service is made. *See Edwards v. Hillman Grp. Co. for S. Woods State Prison Combination Padlocks*, 847 F. App'x 112, 115 (3d Cir. 2021). Irrespective of the method, "[t]he plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)." FED. R. CIV. P. 4(c)(1). Here, the method of service Plaintiffs utilized is only effective in obtaining *in personam* jurisdiction "if the defendant answers the complaint or otherwise appears in response," which requires the defendant to appear or respond for purposes other than challenging the sufficiency of service. N.J. CT. R. 4:4-4(c); *see Whitney*, 2021 WL 1904706, at *1–2. Here, no Defendant answered or appeared in any capacity prior to

Rule 4(m)'s deadline.  Any attempt at personal service beyond this deadline would, therefore, be untimely.  Accordingly, Plaintiffs failed to properly and timely serve Defendants.

### 2.  Rule 4(m)

#### a.  Mandatory Extension

Plaintiffs maintain they have established good cause for an extension of time because they "have been pursuing service in good faith under New Jersey law," and because "Defendants were aware of this case" and "have a history of avoiding service of process." Pls.' Br. at 7.  Five days after filing the complaint, Plaintiffs' counsel emailed Defendants' counsel, Ms. Ward, a courtesy copy of the original complaint. *See* Romano Decl. ¶ 8.  Within nearly one week of service being due under Rule 4(m), Plaintiffs' counsel again emailed Ms. Ward to specifically inquire as to which defendants she would accept service for and whether she was aware if any of the defendants had engaged counsel. *See id.* ¶ 9.  Plaintiffs' counsel followed up with a phone call to Ms. Ward and left a voicemail on January 19, 2021—the day before Plaintiffs filed their Amended Complaint and two days prior to the service deadline. *See id.* ¶ 10.  It appears no response was received to the first email, and Plaintiffs' counsel certifies he did not receive a response to his two other emails, phone call, or voicemail. *See id.* ¶¶ 8–10.  Only after these failed attempts at reaching out to defense counsel, did Plaintiffs actually attempt service under New Jersey law. *See* Galli Decl. ¶ 3.

Based on the foregoing, the Court is not satisfied that Plaintiffs have shown "good cause" to warrant a mandatory extension.  First, while the Court does not find it unreasonable for Plaintiffs to expect a response to their informal inquiries regarding service, Plaintiffs fail to account for what actions, if any, were taken in the two months that elapsed between their initial email to Ms. Ward and their follow-up communications in mid-January. *See MCI Telecomms. Corp.*, 71 F.3d at 1097. "Such 'justifications' are conspicuously absent" from Plaintiffs' counsels' declarations and briefs.

*Id.*  Additionally, the Court finds Plaintiffs' argument that it was pursuing service in "good faith" under New Jersey law to be unavailing.  Although New Jersey's optional mailed service provision may be a permissible method of service under Rule 4(e)(1), this method was certainly not a prudent choice at the time, as it all but guaranteed untimely service in the absence of an extension request. *See* N.J. Cᴛ. R. 4:4-4(c).  Moreover, Plaintiffs' belief that Rule 4(m)'s time limit would somehow be augmented by pursuing this method is simply misguided.  While the Court has no reason to doubt Plaintiffs' counsels' candor or sincerity, ignorance of the law and inadvertence of counsel do not amount to good cause under Rule 4(m). *See Lovelace v. Acme Markets, Inc.*, 820 F.2d 81, 84 (3d Cir. 1987) (citation omitted) ("'Half-hearted' efforts by counsel to effect service of process prior to the deadline do not necessarily excuse a delay."); *Gonzalez*, 268 F.R.D. at 527 (quoting *United States ex rel. Shaw Env't, Inc. v. Gulf Ins. Co.*, 225 F.R.D. 526, 528 (E.D. Va. 2005) (noting "[m]istake of law, misunderstanding of the rules, and inadvertence do not amount to 'good cause' under Rule 4(m)").  Thus, Plaintiffs have failed to offer a reasonable basis for their noncompliance with the Federal Rules or otherwise demonstrate they exercised reasonable diligence in attempting to serve Defendants.

Likewise, failing to seek an extension during the service period, while not fatal in itself, does not weigh in favor of finding good cause. *See Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.*, No. 16-7720, 2017 WL 4074284, at *5 (D.N.J. Sept. 14, 2017) (quoting *United States v. Nuttal*, 122 F.R.D. 163, 197 (D. Del. 1988)) ("Courts in this Circuit have found that failure to request an enlargement of time 'certainly is not by itself fatal to a plaintiff's efforts to establish good cause' and that this third factor can be viewed as a 'subset of the first factor, which considers the diligence and reasonableness of plaintiff's efforts.'").  Accordingly, having already found Plaintiffs failed to satisfy their burden of demonstrating the exercise of diligence in attempting to serve Defendants

and in accounting for their noncompliance with the Federal Rules, the Court finds this factor also fails to support a finding of good cause.

Lastly, the Court finds Defendants will not be prejudiced by lack of timely service. This factor weighs in Plaintiffs' favor. The Court notes that Defendants nearly concede this much by arguing the "absence of prejudice alone can never constitute good cause to excuse late service." Defs.' Opp'n at 8 (quoting *MCI Telecomms. Corp.*, 71 F.3d at 1097); *see* Pls.' Br. at 2. Finding this factor is outweighed by Plaintiffs' lack of reasonable efforts to serve and failure to timely move for an extension, the Court finds Plaintiffs have failed to demonstrate good cause to warrant a mandatory extension.

### b. Discretionary Extension

Plaintiffs alternatively argue that they are entitled to a discretionary extension based on the following contentions: (1) the limitations period as to two of Plaintiffs' claims may have expired; (2) Defendants have attempted to evade service; (3) Defendants had actual notice of the action and defense counsel had a copy of complaint itself; (4) Defendants will not be prejudiced; and lastly, (5) that Defendants' efforts are an attempt to dispose of this case on a technicality rather than on its merits. *See* Reply at 4–5. Plaintiffs further contend that they have now personally served all Defendants and request that this service be deemed timely and effective. *See id.* at 3 (citing ECF Nos. 18–22, 25). The Court notes that Defendants' arguments in opposition are largely limited to Plaintiffs' failure to show good cause and rebuttals to the allegations of avoiding service. *See* Defs.' Opp'n. Defendants do not, however, challenge the sufficiency of Plaintiffs' subsequent attempt at personal service, beyond implying that it is untimely.[6] *See id.* at 4.

---

[6] The Court also notes that, while their Motion to Dismiss was filed on March 23, 2021, a day prior to personal service on any Defendant, Defendants' opposition to Plaintiffs' cross-motion was filed on April 12, 2021, nearly a week after Plaintiffs contend to have completed such service. *See* Defs. Opp'n; *see also* ECF Nos. 18–22, 25. In light of the foregoing context, the Court finds the omission

The Court finds Plaintiffs have satisfied their burden of demonstrating that an exercise of its discretion is warranted. Therefore, the Court will grant Plaintiffs' cross-motion to extend the time for service and deem the personal service on all Defendants timely for the reasons to be discussed. The Court addresses each of the relevant factors in turn.

First, the Court finds there is little doubt Defendants had actual notice of this legal action. The parties are well familiar with each other and the underlying issues in this action, both from their business dealings and their involvement in the TTAB matter. Irrespective of their status as a named party to that proceeding, the Court finds it evident that Defendants had actual notice of this legal action. *See Gonzalez*, 268 F.R.D. at 529 (concluding if the "defendants were unaware of the claims asserted against them, they could not have submitted motions to this court regarding such claims."). Notably, it is conceded as a "fact that Defendants and their counsel had notice of the complaint," but only argued that such notice "is irrelevant for determining good cause." Defs.' Opp'n at 3 n.1 (citations omitted). Nevertheless, it is relevant here, and this factor weighs in favor of granting the extension of time.

Next, the Court finds Defendants will not be prejudiced in their ability to defend against the claims on their merits. Defendants also concede this much, and again only argue it is irrelevant in the context of establishing good cause. *See id.* at 8. Once again, however, it is relevant here, and this factor weighs in favor of granting the extension of time.

Third, the Court will consider the conduct of Defendants. While Defendants may have not evaded service, at least with respect to this action, the Court disagrees with Defendants' contention that the record "shows no evidence of avoidance of service." Defs.' Opp'n at 10. Furthermore,

---

of any objection to the sufficiency of Plaintiffs' attempt at personal service on Defendants relevant. *See Petrucelli*, 46 F.3d at 1305 (concluding the factors enumerated in the advisory committee note to the 1993 amendments are "not exhaustive").

there is little doubt Defendants "conceal[ed] a defect in attempted service" *Gonzalez*, 268 F.R.D. at 528 (quoting FED. R. CIV. P. 4(m) advisory committee's note to 1993 amendments).  To be clear, the Court makes no finding on the issue of whether Defendants evaded service in the TTAB, but the record demonstrates here that Defendants failed to respond to Plaintiffs in any manner for more than 100 days after the Complaint was filed.[7] *See id.* (finding defendants' "fail[ure] to respond to plaintiffs in any way until exactly 121 days after the Complaint was filed," despite receiving copies of the summons and complaint, constituted concealing a defect in attempted service).  Here, much like in *Gonzalez*, Defendants failed to respond to Plaintiffs in any way, despite receiving copies of the Summons, Complaint, and Amended Complaint.  They waited until March 2, 2021, or 130 days after the Complaint was filed, to indirectly inform Plaintiffs of an alleged defect in service, which "can easily be characterized as an attempt to conceal a defect in attempted service." *Id.*; *see* Defs.' Letter.  Based on the unique facts of this case, the Court finds that, at a minimum, defense counsel's absolute and persistent failure to respond to Plaintiffs' counsel's inquiries carried the effect of an attempt to conceal a defect in attempted service.[8]  Likewise, the Court finds it was reasonable for Plaintiffs to presume that Ms. Ward would likely represent Defendants in the present action, given their connection to the underlying dispute and Ms. Ward's representation of the LLC in that matter. *See, e.g.*, *Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.*, No. 16-7720, 2017 WL 4074284, at *7 n.7, (D.N.J. Sept. 14, 2017) (finding good cause for a mandatory extension despite plaintiff's counsel's mistaken presumption that one of the defendants would be represented

---

[7] The date of Defendants' first filing, February 9, 2021, was 109 days after the Complaint was filed. *See* ECF No. 13.  Neither party nor their counsel has certified, nor does the record suggest, that Defendants responded to Plaintiffs in any way prior.  Furthermore, it appears from the record that Defendants first raised an issue with the sufficiency of service on March 2, 2021, or 130 days after the Complaint was filed. *See* Defs' Letter [ECF No. 14].

[8] The Court finds it imperative to repeat here, as stated *supra*, that Defendants consider it a "fact" that the "Defendants and their counsel had notice of the complaint." Defs.' Opp'n at 3 n.1.

by an attorney from a related, state court proceeding involving similar issues, and despite that particular defendant not being named as a defendant in the other matter).  Moreover, Ms. Ward offers no explanation for her failure to provide any form of a response to Mr. Romano's inquiries. Ms. Ward certifies that, at the time, she was only engaged to represent the LLC in the TTAB matter and "had no authority to waive or accept service on behalf of the Defendants." Ward Decl. ¶ 17. At no time, however, did Ms. Ward convey this information to Mr. Romano, in spite of his repeated attempts to elicit such information for the clear purpose of attempting service in this action. Therefore, the Court finds Defendants' unexplained and outright refusal to respond to Plaintiffs' counsel essentially amounted to and bore the effects of concealment by inaction. *See Gonzalez*, 268 F.R.D. at 528 (finding no merit to the "claim that concealment is limited to 'actions' as opposed to 'inaction'").  Thus, this factor weighs in favor of granting the extension of time.

Fourth, and "one of the most important factors[,] . . . is whether the statute of limitations has run on the claims." *Gonzalez*, 268 F.R.D. at 529.  It is undisputed the statute of limitations on at least two of Plaintiffs' claims expired on October 24, 2020, two years after the causes of action accrued. *See* Pls' Br at 3; Defs. Letter, Mar. 2, 2021 [ECF No. 13].  As a practical matter, when the statute of limitations has not run, either decision by a court will essentially have the same effect on the parties. *See Petrucelli*, 46 F.3d at 1304 n.6.  This is not the case, however, after the time to bring a claim has expired. *See id.*  Thus, it is logical that this factor be given special consideration within the context of the other factors when determining if a discretionary extension is warranted. *See id.* (noting the harsh consequences of denying a request to extend the time for service after the statute of limitations have run on the plaintiffs' claims).  Here, the statute of limitations has run on at least two of the claims against Defendants and, therefore, dismissing them without prejudice would essentially be no different from dismissing them with prejudice.  As such, this factor weighs

in favor of granting an extension and will be given special consideration due to the practical consequences of dismissing such claims without prejudice.

Fifth, because Plaintiffs are not proceeding *pro se*, they are presumed to be represented by counsel who are well-acquainted with the Federal Rules of Civil Procedure.  Therefore, this factor weighs against granting a discretionary extension.

Lastly, the Court considers "any other factor that may be relevant when deciding whether to grant an extension or dismiss the complaint." *Gonzalez*, 268 F.R.D. at 529.  In this Circuit, it is generally preferable to decide a case on its merits rather than on a procedural technicality. *See id.*; *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984).  Without any regard to who "may have contributed to this procedural impasse, equity favors granting an extension of time for service so that this matter may be decided on its merits." *Gonzalez*, 268 F.R.D. at 529 (granting cross-motion to extend the time for service where the "plaintiffs did not move for an extension of time to serve until 166 days after the complaint was filed" and failed to establish good cause but demonstrated a discretionary extension was warranted under the unique circumstances of the case).  The Court, therefore, finds this factor weighs in favor of granting the extension.

As the Court previously discussed, *supra*, an additional factor is also relevant to its inquiry. Defendants' opposition to Plaintiffs' cross-motion was filed on April 12, 2021, nearly a week after Plaintiffs contend to have completed their attempts at personal service. *See* Defs. Opp'n; *see also* ECF Nos. 18–22, 25.  The Court, therefore, finds the absence of any objection to the sufficiency of this subsequent attempt at service striking.  As such, the Court will deem this service timely and advise the parties that the Court takes a dim view of gamesmanship in connection with service of a person who is present within a judicial district of the United States and subject to such service.[9]

---

[9] Defendant Jason Thomas was served on March 24, 2021 at his home in Delaware. *See* ECF No. 22. Defendants Split Decision Music, LLC and Douglas Moore were served on March 25, 2021 at

The Court finds the majority of the factors outlined above, as well as the principles of general equity, weigh in favor of granting a discretionary extension. As a result, the Court finds that an exercise of its discretion warrants granting Plaintiffs' cross-motion for an extension of time and will deem the personal service on all Defendants timely.

III.   **CONCLUSION**

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** this **5th** day of **October**, **2021**, that Plaintiffs' Cross-Motion for an Extension to Complete Service [ECF No. 24] is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' request for extensions of time to effect service on Defendants Split Decision Music, LLC, Douglas Moore, Michael Birchard, Raymond Pierson, Thomas King, Jason Thomas, Anderson Entertainment Management, Inc., and Frank Annuziata is **GRANTED**; and it is further

**ORDERED** that service on Defendant Jason Thomas, which occurred on March 24, 2021, is deemed timely; and it is further

---

Moore's home in New Jersey. *See* ECF No. 20 (certifying Moore signed on behalf of himself and the LLC). The AEM Defendants were also served on March 25, 2021 at Anderson Entertainment Management, Inc.'s place of business. *See* ECF No. 18 (certifying Annunziata's assistant had him on the phone and was directed to accept service on behalf of himself and the business). Defendants Michael Birchard and Raymond Pierson were personally served on March 29, 2021 at their homes in New Jersey and Pennsylvania, respectively. *See* ECF Nos. 19, 21. Defendant Thomas King was served on April 6, 2021 at his home in Pennsylvania. *See* ECF No. 25 (certifying King signed). Therefore, the Court finds the foregoing service, but for being untimely, was otherwise valid under New Jersey law and/or Rules 4(e) or 4(h). *See generally Action Adjustment Serv., Inc. v. Heenan*, No. 20-2032, 2021 WL 3015412, at *4–8 (E.D. Pa. June 2, 2021), *report and recommendation adopted*, (E.D. Pa. July 20, 2021) (finding "drop service" was proper under Rule 4(e)(2) where the defendant "refused to open the door but watched on from a window as the process server, who had identified himself as such, placed the summons and complaint on the doorstep" because, *inter alia*, "the return of service, made under penalty of perjury, identifie[d] the person served [by name] . . . and list[ed] her sex, skin and hair color, and approximate age, height, and weight" and, therefore, constituted strong evidence of valid service).

**ORDERED** that service on Defendants Split Decision Music, LLC, Douglas Moore, Frank Annuziata, and Anderson Entertainment Management, Inc., which occurred on March 25, 2021, is deemed timely; and it is further

**ORDERED** that service on Defendants Michael Birchard and Raymond Pierson, which occurred on March 29, 2021, is deemed timely; and it is further

**ORDERED** that service on Defendant Thomas King, which occurred on April 6, 2021, is deemed timely.

s/ Sharon A. King
SHARON A. KING
United States Magistrate Judge

cc:  Hon. Renée M. Bumb, U.S.D.J.